IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:17 cv 250

| | |
|---|---|
| **LOANN MEEKINS,** *as lawful guardian ad litem of T.W.*, <br><br> **Plaintiff,** <br><br> v. <br><br> **CLEVELAND COUNTY BOARD OF EDUCATION,** <br><br> **Defendant.** | **MEMORANDUM & RECOMMENDATION** |

Before the Court is Defendant's Motion to Dismiss. [# 7]. On September 11, 2017, Plaintiff filed her Complaint asserting claims of failure to provide a free appropriate public education, in violation of 29 U.S.C. § 794, the Fourteenth Amendment, and N.C. GEN. STAT. § 115C-107.2; excessive force; negligent infliction of emotional distress; and negligence. [# 1]. On December 20, 2017, Defendant filed its motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6). [# 7]. The District Court referred the motion to this Court. Accordingly, Defendant's motion is now before this Court for a Memorandum and Recommendation to the District Court. The Court will recommend the District Court grant Defendant's Motion to Dismiss. [# 7].

I.  **Relevant Factual Background**

The facts in this case center on an alleged incident that occurred on September 19,

2014, when T.W. was fifteen years old[1] and enrolled in Kings Mountain High School's Supporting Academics and Independent Living (SAIL) program. [Compl. ¶¶ 1, 7]. Defendant is the board of education that oversees the Cleveland County School District wherein Kings Mountain High School (KMHS) is located. [Id. at ¶¶ 1, 6]. Plaintiff alleges Defendant "has purchased insurance to cover claims as outlined herein." [Id. at ¶ 68].

Prior to 2014, T.W. had been diagnosed with autism spectrum disorder. [Id. at ¶ 7]. Autism is a developmental disorder marked by challenges with communication and social skills. [Id. at ¶ 7]. T.W. had also been diagnosed with anxiety disorder and narcolepsy. [Id. at ¶ 7].

In May 2014, before starting the SAIL program, a special team convened and created T.W.'s individualized education plan (IEP). [Compl. ¶ 10]. The KMHS "exceptional children" teacher Rachel Bye was present and signed T.W.'s IEP. [Id. at ¶ 12]. T.W.'s IEP included a behavioral intervention plan (BIP). [Id. at ¶ 10]. The BIP outlined that if T.W. were to have a behavior issue, T.W.'s mother should be called "rather than retraining her." [Id. at ¶ 10]. Further, the BIP stated the Police Department should be contacted only if T.W.'s safety were in danger. [Id. at ¶ 10]. If a situation were to arise where T.W. had to be restrained, T.W.'s BIP stated males were neither to be involved in the intervention nor to touch T.W.; this fact was communicated to KMHS staff. [Id. at ¶¶ 11, 13]. At some point before the incident, T.W.'s mother notified the school that T.W. is afraid of the police and would run away if the police were called. [Compl. ¶ 8]. To help

---

[1] At the time of filing the Complaint, Plaintiff was eighteen years old. [Compl. ¶ 5]. On March 27, 2018, the Court ordered Loann Meekins appointed guardian ad litem for T.W. due to T.W.'s mental incapacitation. [# 21].

familiarize T.W. before school started, T.W. met with KMHS administrators and staff. [Id. at ¶ 14].

On September 19, 2014, T.W. was late to school. [Id. at ¶ 15]. T.W. had been sick and absent the prior two days. [Id. at ¶ 15]. That morning, T.W.'s mother told the school to call her if T.W. started to feel unwell. [Id. at ¶ 16]. A staff member escorted T.W. to the exceptional children classroom. [Id. at ¶ 17]. The exceptional children classroom has an adjoining door with Ms. Blanton's classroom. [Compl. ¶ 21].

For the day's lesson, T.W. needed the use of her computer tablet, but T.W. had issues unlocking the tablet's passcode. [Id. at ¶ 18]. Then, T.W. quarreled with the classroom's 'applied behavior analysis tech' about the tablet. [Id. at ¶ 19]. T.W. acquiesced and returned the tablet. [Id. at ¶ 19]. Afterward, T.W. told Rachel Bye she wanted to go to the front office and call her mother because she was not feeling well. [Id. at ¶ 20]. T.W. had not memorized her mother's phone number. [Id. at ¶ 20]. T.W. thought the office would help her. [Compl. ¶ 20]. Rachel Bye denied T.W.'s request. [Id. at ¶ 21]. Bye told T.W. "she must first memorize her mother's number, and then she could either make the phone call in Ms. Bye's classroom or the adjoining classroom, Ms. Blanton's room." [Id. at ¶ 21].

Unsatisfied, T.W. made moves to exit the exceptional children classroom through the main classroom door. [Id. at ¶ 22]. Bye blocked T.W.'s attempt. [Id. at ¶ 22]. Then, T.W. tried to go out through the main classroom door of Ms. Blanton's classroom. [Id. at ¶ 22]. Mr. Green, a substitute teacher, blocked T.W's efforts. [Compl. ¶ 22]. At that moment, assistant principal Jeremy Shields called Ms. Blanton's classroom on an unrelated matter. [Id. at ¶ 23]. Ms. Blanton answered and told Shields there was a problem and Shields

3

was needed in her classroom. [Id. at ¶ 23]. Shields recruited Officer Davis to assist him. [Id. at ¶ 24]. Officer Davis is a 41 year old Caucasian male. [Id. at ¶ 24]. When Shields and Davis arrived at Ms. Blanton's classroom, T.W. was still attempting to exit. [Id. at ¶ 24]. Officer Davis switched with Mr. Green and continued blocking T.W. from leaving Ms. Blanton's classroom. [Compl. ¶ 24]. T.W. told Officer Davis she had permission to call her mother. [Id. at ¶ 25].

Shields suggested to T.W. that they should move to another room for privacy. [Id. at ¶ 26]. T.W. stated she did not want privacy but only to call her mother. [Id. at ¶ 26]. Then, Officer Davis grabbed at T.W. [Id. at ¶ 27]. T.W. pulled away. [Id. at ¶27]. Davis shoved T.W. into another room. [Compl. ¶ 27]. T.W. fell to the floor. [Id. at ¶ 27]. As T.W. attempted to get back up, Davis pushed her back down. [Id. at ¶ 28]. Davis got on top of T.W. and attempted to handcuff her. [Id. at ¶ 28]. T.W. resisted and struggled to get away. [Id. at ¶ 28]. Officer Davis punched T.W.'s face. [Id. at ¶ 28]. Officer Davis then "placed his hand on [T.W.'s] neck and proceeded to punch her again and again." [Compl. ¶ 28]. T.W. could not breathe. [Id. at ¶ 29]. Officer Davis continued to punch T.W., and at one point Davis gathered T.W.'s hair, pulled her head back, and again hit T.W. across the side of her face. [Id. at ¶ 30].

In an effort to escape further harm, T.W. bit Davis' hand. [Id. at ¶ 31]. Davis responded by administering pepper spray on T.W. and punched her again. [Id. at ¶ 31]. At that moment, the pepper spray effects were so strong T.W. was nearly blind. [Id. at ¶ 31]. Rachel Bye witnessed Davis pepper spraying T.W. [Compl. ¶ 31]. Bye then felt she "had to walk away." [Id. at ¶ 31]. No one tried to stop the attack. [Id. at ¶ 33].

4

Next, assistant principal Shields ordered T.W. to stand up. [Id. at ¶ 34]. T.W. complied. [Id. at ¶ 34]. Then, Officer Davis grabbed T.W.'s hair and slung her across the room. [Id. at ¶ 34]. As T.W. lay on the ground, Davis pepper sprayed her a second time. [Compl. ¶ 34]. Davis continued attacking T.W. until he heard sirens approaching. [Id. at ¶ 35]. T.W. asked Shields for napkins and water. [Id. at ¶ 36]. Shields retrieved some napkins and threw them on the ground near T.W. [Id. at ¶ 36]. Shields did not get T.W. water. [Id. at ¶ 36].

Paramedics arrived and found T.W. on the floor—bloodied and hysterical. [Id. at ¶ 37]. T.W.'s nose and lip were bleeding. [Compl. ¶ 37]. There was blood on the floor in front of where T.W. sat handcuffed. [Id. at ¶ 37]. T.W. was hyperventilating. [Id. at ¶ 37]. T.W. repeated she could not see and she only wanted to call her mother. [Id. at ¶ 38]. EMS reported as soon as T.W. was laid down on a stretcher, an officer handcuffed her to the stretcher. [Id. at ¶ 39]. Then, a different officer boarded the ambulance with T.W. for transport. [Id. at ¶ 39].

The entire incident occurred during the time T.W.'s mother drove back home. [Compl. ¶ 40]. Rachel Bye called T.W.'s mother and told her there had been an altercation between T.W. and Officer Davis. [Id. at ¶ 40]. T.W.'s mother asked Bye to speak with her daughter. [Id. at ¶ 39]. Bye stated T.W. could not speak at that time. [Id. at ¶ 40]. T.W.'s mother then asked to speak with Officer Davis. [Id. at ¶ 40]. Bye told T.W.'s mother she could not speak with him. [Id. at ¶ 40]. Bye told T.W.'s mother to return to the school. [Compl. ¶ 41]. T.W.'s mother asked for clarification of what exactly happened. [Id. at ¶ 41]. Bye stated she did not know and hung up. [Id. at ¶ 41].

The weekend following the attack, Officer Davis was notified he was going to be taken out of KMHS for unspecified reasons. [Id. at ¶ 46]. Less than a month later, Davis was reinstated as a school resource officer at KMHS. [Id. at ¶ 46].

T.W.'s physical injuries included contusions of the eyelid, acid chemical burns, acute headaches, and bald spots on her head where her hair had been ripped out. [Id. at ¶ 42]. T.W.'s emotional injuries, which are ongoing, include: "increased tearfulness, disrupted sleep due to nightmares, irritability, fatigue, a sixty-pound weight gain, feelings of hopelessness, helplessness, and worthless [sic], decreased concentration, an exaggerated startle reflex, auditory and visual hallucinations, increased anxiety, panic attacks, depression, isolation, difficulty being in groups of people, restlessness, tension, worry, racing thoughts, re-experiencing the trauma, and suicidal thoughts." [Compl. ¶ 43]. T.W. has been diagnosed with PTSD, generalized anxiety disorder, major depressive disorder, and psychotic features. [Id. at ¶ 44]. T.W. was admitted for psychiatric hospitalization. [Id. at ¶ 44].

T.W. no longer attends KMHS. [Id. at ¶ 45]. T.W. is now in a medical homebound program. [Id. at ¶ 45].

Plaintiff alleges Defendant took no disciplinary action against the six Cleveland County employees who were present during the attack. [Id. at ¶ 47]. The six employees all knew or should have known about T.W.'s disability and IEP. [Compl. ¶ 47]. The six employees did nothing to stop the attack or implement the IEP. [Id. at ¶ 47]. Plaintiff alleges Defendant did not take steps to ensure its personnel had proper knowledge in deescalating situations involving autistic children. [Id. at ¶ 47].

## II. Legal Standards

**Federal Rule of Civil Procedure 12(b)(1).** A 12(b)(1) motion to dismiss addresses whether a court has subject-matter jurisdiction to hear the dispute. Darling v. Falls, 236 F. Supp. 3d 914, 920 (M.D.N.C. 2017). Where a defendant alleges jurisdictional claims in the complaint are false, a "court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). The burden of proving subject matter jurisdiction rests with a plaintiff. Darling, 236 F. Supp. 3d at 920 (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 188–89 (1936)). A court should only grant a 12(b)(1) motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, Fredericksburg & Potomac R.R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991).

"[T]he Eleventh Amendment grants the State a legal power to assert sovereign immunity defense should it choose to do so." Wisconsin Dep't of Corr. V. Schacht, 524 U.S. 381, 389 (1998). "Eleventh Amendment immunity has attributes of both subject-matter jurisdiction and personal jurisdiction." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005); *see also* Frye v. Brunswick Cty. Bd. of Ed., 612 F. Supp. 2d 694, 700–01 (E.D.N.C. 2009). Sovereign immunity is not a mere defense to liability but complete immunity from suit. Constantine, 411 F.3d at 482. "Given the States' unique dignitary interest in avoiding suit . . . it is no less important to resolve Eleventh Amendment immunity questions as soon as possible after the States asserts its immunity." Id.

7

**Federal Rule of Civil Procedure 12(b)(2).** A plaintiff bears the burden of proving a district court has personal jurisdiction over a defendant by a preponderance of the evidence. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). Courts are provided flexibility in how the address a motion to dismiss for lack of personal jurisdiction. For example, a court may rule on the motion based on the pleadings, hold an evidentiary hearing, or allow jurisdictional discovery prior to ruling on the motion. *See* Marx Indus., Inc. v. Chestnut Ridge Foam, Inc., 903 F. Supp. 2d 358, 362 (W.D.N.C. 2012). When a court rules on a defendant's Rule 12(b)(2) motion to dismiss without an evidentiary hearing, a plaintiff need only set forth a prima facie case that the court has personal jurisdiction over the defendant. New Wellington, 416 F.3d at 294 (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). In determining whether a plaintiff has made this prima facie showing, a court construes the allegations in the complaint in the light most favorable to the plaintiff and must resolve all factual disputes in favor of the plaintiff. Id.

**Federal Rule of Civil Procedure 12(b)(6).** The central issue for resolving a Rule 12(b)(6) motion is whether the claims state a plausible claim for relief. *See* Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering a defendant's motion, the Court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190–92. Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ."

8

Case 1:17-cv-00250-MR-DLH    Document 22    Filed 05/07/18    Page 8 of 15

Consumeraffairs.com, 591 F.3d at 255; *see also* Giacomelli, 588 F.3d at 189.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007); *see also* Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; *see also* Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. *See also* Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

**III. Analysis**

The thrust of Defendant's motion to dismiss is two-fold: 1) Plaintiff failed to exhaust her administrative remedies as required by the Individuals with Disabilities Education Act

(IDEA);[2] and 2) the board has state immunity as to Plaintiff's negligent infliction of emotional distress (NEID) and negligence claims.

The FAPE Claim. Plaintiff's first claim reads "Failure to Provide a Free Appropriate Public Education in Violation of Section 504 of the Rehabilitation Act of 1973 and 42 U.S.C. § 1983." [*See* Compl. ¶¶ 48–61]. In the paragraphs that follow, Plaintiff details how Defendant failed to provide T.W. a Free Appropriate Public Education (FAPE), in violation of federal law, "the Fourteenth Amendment of the Constitution, 29 U.S.C. § 701, and [N.C. GEN. STAT.] § 115C-107.2." [Compl. ¶ 60]. Buried within the claim, Plaintiff also states T.W. had the federally protected right to be free from excessive force and Defendant violated that right. Thus, the Court construes claim one to be two claims: the first claim is for Defendant's failure to provide a FAPE; the second claim is for excessive force brought through § 1983.

Defendant raises a 12(b)(1) motion regarding Plaintiff's FAPE claim. While Plaintiff labels her claim as arising under the Rehabilitation Act, the essence the claim centers on a deprivation of T.W.'s FAPE. The Supreme Court has stated any claims arising from the core guarantee of IDEA require administrative exhaustion. Fry v. Napoleon Cmty. Schs., ___ U.S. ___, 137 S. Ct. 743, 748 (2017). The core guarantee of IDEA is a "free and appropriate public education" or FAPE. Id.; 20 U.S.C. § 1412(a)(1)(A). In this case, the Court finds Plaintiff's FAPE claim required administrative exhaustion. *See* Sauers v. Winston –Salem/Forsyth Cty. Bd. of Ed., No. 1:15-CV-427, 2018 WL 1621516, at *1–*2

---

[2] Defendant argues Plaintiff's first claim is essentially an IDEA claim.

(M.D.N.C. Mar. 30, 2018) (outlining IDEA's administrative procedures).

Plaintiff argues this case is an exception to the administrative exhaustion requirement because administrative exhaustion would be futile or the relief inadequate. The Court is not persuaded. *See generally* McCormick v. Waukegan Sch. Dist. No. 60, 374 F.3d 564, 568 (7th Cir. 2004) ("Where . . . a plaintiff has alleged injuries that could be redressed to some degree by the IDEA's administrative procedures and remedies, then the courts should require exhaustion of administrative remedies."); Padilla ex rel. Padilla v. Sch. Dist. No 1 in City & Cty. of Denver, Colo, 233 F.3d 1268, 1274 (10th Cir. 2000) ("[T]he dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required. . . . Where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required . . . ").

While Plaintiff alleges many facts and legal theories, the 'gravamen' of this claim is a deprivation of T.W.'s FAPE. [Compl. ¶¶ 48–61]. *See* Fry, 137 S. Ct. at 755. The Court is particularly struck by the fact that Plaintiff has requested relief that is seemingly available under IDEA: Plaintiff asked the Court for injunctive relief prohibiting Defendant from repeating the same or similar conduct alleged in the Complaint; Plaintiff asked the Court to order Defendant to adhere to Plaintiff's IEP. [Compl. p. 10 ¶¶ 5–6]. Thus, the Court finds the exhaustion requirement in this case is neither futile nor wanting of adequate relief. *See* Z.G. v. Pamlico Cty. Pub. Schs. Bd. of Ed., No. 4:15-CV-183-D, 2017 WL 477771, *7 (E.D.N.C. Feb. 3, 2017) (citing 20 U.S.C. § 1415(b)).

Because Defendant raised a 12(b)(1) motion, the burden is on Plaintiff to show she

11

Case 1:17-cv-00250-MR-DLH   Document 22   Filed 05/07/18   Page 11 of 15

exhausted administrate remedies before filing with a district court. Plaintiff has not alleged as such in her Complaint or Response. Accordingly, the Court will recommend Plaintiff's FAPE claim, however 'artfully pled,' be dismissed for lack of subject matter jurisdiction.

The Excessive Force Claim. Plaintiff's excessive force claim, brought through § 1983, does not require exhaustion. *See* Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496, 507 (1982). Plaintiff, however, has failed to allege Defendant was a final policy maker that inflicted "the injury the government as an entity is responsible under § 1983." Monell v. Dep't of Social Servs. Of City of New York, 436 U.S. 658, 694 (1978); *see also* Wilcoxon v. Buncombe Cty., 129 F. Supp. 3d 308, 315–16 (W.D.N.C. 2014) (J., Reidinger).

Plaintiff has filed a companion case suing Officer Davis in his individual capacity and the City of Kings Mountain. [*See* 1:17-CV-252-MR-DLH]. In that complaint, Plaintiff alleges "[a]t all times relevant to this action, [Officer Davis] was employed by [Kings Mountain Police Department]." [1:17-CV-252, # 1 ¶ 6]. In the answer, defendants admit Davis was employed by the City of Kings Mountain (COKM). [1:17-CV-252, # 6 ¶ 6]. In the instant case's Complaint, Plaintiff fails to mention Officer Davis' precise relationship to the COKM or KMHS. Therefore, the Court takes judicial notice that at the time of the alleged incident Officer Davis was employed by the City of Kings Mountain.

It is clear from Plaintiff's Complaint that the only person who could be alleged to have committed *excessive force* against T.W. is Officer Davis. Plaintiff does not allege Defendant, a county school board, was the final policy maker for safety officers KMHS employed. The paucity of detail in the allegations force this claim to fail. Accordingly, the

12

Court will recommend the District Court dismiss Plaintiff's excessive force claim for failure to state a claim for which relief can be granted.

Plaintiff's Claims for NEID and Negligence. Defendant argues it is immune from Plaintiff's NEID and negligence claims. N.C. G̲e̲n̲. S̲t̲a̲t̲. § 115C-42 authorizes a local board of education to waive governmental immunity through the purchase of liability insurance. "N.C. G̲e̲n̲. S̲t̲a̲t̲. § 115C-42 is the exclusive means of a local board of education to waive immunity." Ripellino v. N.C. Sch. Bds. Ass'n, Inc., 581 S.E.2d 88, 92 (N.C. Ct. App. 2003). Plaintiff's Complaint reads "[u]pon information and belief, Defendant has purchased insurance to cover [NEID and negligence] claims as outlined herein." [Compl. ¶ 68].

Defendant directly disputes Plaintiff's assertion that Defendant purchased insurance, which would waive immunity under N.C. G̲e̲n̲. S̲t̲a̲t̲. § 115C-42. In its Motion to Dismiss, Defendant included Defendant's "Errors & Omissions/General Liability Trust Fund Coverage Agreement" and the affidavit of Melody Coons, the records custodian for the North Carolina School Boards Trust risk management program. [#7, Ex. 1]. Further, Defendant attached the affidavit of Dan Karpinski, the Chief Financial Officer for Cleveland County Board of Education. [#7, Ex. 2]. Plaintiff's Response does not address the issue of immunity. Plaintiff does not rebut the affidavits or the inclusion of the coverage agreement.

In determining the issue of immunity, the Court has decided it will look to the other evidence Defendant provided: the affidavits and its coverage agreement. From this evidence, it appears Defendant has not waived immunity. Again, the Court emphasizes

Plaintiff chose not to address this issue or the evidence in her Response [*See* # 11].

Under either 12(b)(1) or 12(b)(2), a plaintiff has the burden showing jurisdiction is available. Under either of these standards, Plaintiff has not met her burden. Plaintiff did not dispute Defendant's argument, coverage agreement, or its affidavits. Thus, regarding subject-matter jurisdiction, the Court recommends that the jurisdictional facts are not in dispute and Defendant is entitled to dismissal as a matter of law. Regarding personal jurisdiction, even in the light most favorable to Plaintiff, the Court finds Plaintiff has failed to make a prima facie showing of jurisdiction. Thus, under a 12(b)(2) analysis, the Court will also recommend the claim be dismissed.

In the alternative, the Court will recommend the District Court use its discretion and not exercise supplemental discretion over Plaintiff's NEID and negligence claims. *See* Crosby v. City of Gastonia, 635 F.3d 634, 644 (4th Cir. 2011); Stevenson ex rel. Stevenson v. Martin Cty. Bd. of Ed., 93 F. Supp. 2d 644, 649 (E.D.N.C. 1999) (citing 28 U.S.C. § 1367(c)(2)).

IV. **Conclusion**

The Court **RECOMMENDS** the District Court **GRANT** Defendant's Motion to Dismiss. [# 7]. Specifically, the Court recommends the District Court dismiss Plaintiff's FAPE claim and excessive force claim. The Court also recommends the District Court dismiss Plaintiff's NEID and negligence claims. In the alternative, the Court recommends the District Court decline to exercise supplemental jurisdiction over Plaintiff's NEID and negligence claims.

Signed: May 5, 2018

*Dennis L. Howell*
Dennis L. Howell
United States Magistrate Judge

## Time for Objections

The parties are hereby advised, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), *cert. denied*, 467 U.S. 1208 (1984).